IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GRANT M. TINSLEY, L.L.C., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-0551-CV-W-HFS |
| ) | |
| RNA STORES, L.L.C., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

In this declaratory judgment action, defendants RNA Stores, L.L.C. and Christina C. Johnson have filed a motion for summary judgment, asking the court to declare that plaintiffs Grant M. Tinsley, L.L.C., Donald H. Robb and Karen A. Robb are required under the terms of the parties' agreements to pay rent on certain premises through the end of the leases. Defendants also seek a judgment on their counterclaim against plaintiffs based on proceedings in Kansas and Nebraska state courts, as well as an award of attorney fees. For the reasons set forth below, the court will grant defendants' motion as to plaintiffs' rent obligation, but will deny the remainder of relief sought as premature.

Background

Defendant RNA operated three art galleries in Kansas City, Missouri (the Plaza Location), Overland Park, Kansas (the Oak Park Mall Location), and Omaha, Nebraska (the Oak View Mall Location). Defendants RNA and Johnson occupied the premises pursuant to three leases and conducted business under the name "Four Star Galleries." On November 19, 2005, plaintiffs entered into an Asset Purchase Agreement (APA) with defendants, by which plaintiffs acquired certain

assets of Four Star Galleries from defendants. Subsequently, on February 16, 2006, plaintiffs and defendants entered into a First Amendment to Asset Purchase Agreement (First Amendment). Under the First Amendment, plaintiffs agreed to pay ongoing rent on the three premises. Pertinent provisions of Section 7 of the First Amendment are as follows:

> C. <u>Lease Assignment/Sublease</u>. After Closing, Seller will use its best efforts to obtain the consent of the landlords at the three Four Star Galleries locations to the assignment of the Leases. Buyer acknowledges that it is occupying space leased to Seller. Buyer shall provide Seller with a duly signed current financial statement of Buyer and Donald and Karen Robb and a current resume of Donald Robb to assist the Seller in obtaining the landlords' consent to the assignment or sublease of the Leases. Buyer shall cooperate fully with Seller in obtaining the landlords' consent to the assignment of the Leases. Seller hereby agrees that it will not provide such financial statements or resume to anyone except representative of the landlords without the consent of Buyer. All costs charged by the landlords to obtain the assignment of subleases shall be paid by the Buyer. Buyer shall immediately remit upon receipt of an invoice of such charges.
>
> D. <u>Payment of Ongoing Rent</u>. Buyer hereby agrees that it will pay the base rent and all additional rent and abide by all the terms and conditions of the Leases. Such rents shall be paid when same become due and Buyer shall pay any and all penalties, interest and other charges arising by virtue of Buyer's failure to timely pay rent or otherwise abide by the terms and conditions of the Leases. Seller will cooperate with Buyer to arrange for direct payment of the rent to the landlords under the Leases. If such direct payment is arranged, Buyer shall provide to Seller, not later than the tenth (10th) day of each month, a copy of all rental invoices (where available) and written evidence that the rents have been timely paid. Such obligation to provide Seller written evidence of payment shall apply only so long as Seller remains personally liable to the landlords under the Leases.

First Amendment, Section 7. C. and D.

Defendants had already paid the rents for February 2006, so plaintiffs were responsible for paying the rents beginning in March 2006. On March 22, 2006, plaintiffs notified defendants that they would surrender the Oak Park Mall and Oak View Mall locations on June 30, 2006. On March 31, 2006, defendant Christina Johnson exercised the Mutual Right to Terminate the Oak Park Lease, which caused the lease to terminate on September 26, 2006, and sent written notice to that effect to

2

the lessor. In a May 30, 2006 letter, defendants' attorney sent a letter to plaintiffs' attorney, stating that under the terms of the APA and First Amendment, plaintiffs were contractually obligated to accept assignments of the Leases, to remain at each of the leased premises, and to pay the monthly rentals on the Leases through the balance of the respective terms of each lease, and further stated that the remaining rentals under the Leases approximated $235,764.57.

On July 7, 2006, plaintiffs filed this declaratory judgment action, asking the court to find that they are not obligated to accept assignment of the Leases and that they are not obligated to pay rentals during the remaining term of each lease. Subsequently, defendants filed the motion for summary judgment now under consideration.

### Legal Standards

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

### Analysis

In seeking summary judgment, defendants argue that Section 7. D. of the First Amendment undeniably obligates plaintiffs to pay ongoing rent on the leases for the remainder of the lease terms. Under the terms of the APA and First Amendment, Nebraska law governs. The Nebraska Supreme Court has held: "When the terms of a contract are clear, the court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them." Guerrier v. Mid-Century Ins. Co., 266 Neb. 150, 153, 663 N.W.2d 131, 134 (2003) (citing Reisig v. Allstate Ins. Co., 264 Neb. 74, 644 N.W.2d 544 (2002)). Here, Section 7. D. of the First Amendment, titled "Payment of Ongoing Rent," states in part: "Buyer agrees that it will pay the base rent and all additional rent and abide by all of the terms and conditions of the leases." The language of this sentence and the balance of Section 7. D. clearly and unambiguously requires plaintiffs to pay ongoing rent for the balance of the three leases' terms.

Plaintiffs contend that their rent obligations on the Oak Park Mall and Oak View Mall Locations ended when they vacated those premises as of June 30, 2006. First, they point to Section 15(a) of the APA, which provides in part: "Buyer has no liability or obligation with respect to the Assets or Businesses for any claim, transaction, event or other matter which existed or occurred on or prior to November 23, 2005 (the Possession Date), without exception, reservation or qualification . . ." This section is ineffectual to escape rent obligations, because the parties subsequently entered into the First Amendment, with plaintiffs expressly taking on the obligation to pay ongoing rent.

Next, plaintiffs argue that because the leases were never assigned to them, their obligation to pay rent on the Oak Park and Oak View locations ended once they vacated the premises. Section 7. C. of the APA, titled "Lease Assignment/Sublease," provides in part: "After Closing, Seller will use its best efforts to obtain the consent of the landlords at the three Four Star Galleries locations

4

to the assignment of the leases." The use of the phrase "best efforts" allows for the distinct possibility that assignment of the leases might not occur due to lack of the landlords' consent. While the parties may have hoped and planned for the leases to be assigned to plaintiffs, in the court's view, no part of this section <u>requires</u> that the leases be assigned to plaintiffs in order for the rent obligation (ongoing through the lease terms' duration) to take hold. In fact, Section 7. D. anticipates an arrangement wherein plaintiffs would make direct rent payments to the landlords and then provide written proof of payment to defendants. "Such obligation to provide Seller written evidence of payment shall apply only so long as Seller remains personally liable to the landlords under the Leases." First Amendment, Section 7. D. Again, this language plans for a situation in which the leases are not ultimately assigned. Thus, plaintiffs' argument that Sections 7. C. and D. "should be read in conjunction . . . as an agreement by plaintiffs to pay rent during their occupation of the leased premises, and nothing more" (Plfs.'s Brief at 8) is without merit.

Plaintiffs also argue that the First Amendment's indemnity clause, "taken in conjunction with the other pertinent provisions of Section 7 of the First Amendment, indicates that no such claimed assignment was intended or occurred." Plfs.' Brief at 9. Plaintiffs quoted Section 7. F. as follows:

> F. <u>Indemnity</u>. Seller hereby agrees to indemnify and hold Buyer harmless from and against any and all loss damage or liability it may sustain as a result of Seller's failure to timely pay the rental due on the leases.

As defendants point out, plaintiffs left out the last sentence of that provision: "Provided, however, that this indemnity shall only apply in the event that Buyer has timely made the required rental payments to Seller if required." In other words, this provision releases plaintiffs from liability for unpaid rent if they already timely paid that rent to defendants. Although the provision anticipates a situation in which assignment of the leases does not occur, it does not support plaintiffs' argument

5

that assignment was not intended. And in any event, as noted above, plaintiffs' obligation to pay rent for the terms of the leases is absolute and exists with or without assignment of the leases.

Lastly, the court turns to defendants' counterclaim and claim for attorney fees. In their counterclaim, defendants ask the court to enter judgment against plaintiffs in the amount of a default judgment against Christina Johnson obtained by Oak Park Mall in Kansas state court. They also seek a judgment against plaintiffs arising out of a lawsuit in Nebraska state court that is apparently ongoing, involving the Oak View Mall lease and non-party Michael Johnson. The court finds that it is premature to rule on the counterclaim issues at this time. Similarly, the court finds it premature to rule on defendants' claim for attorney fees. Therefore, summary judgment on these issues will be denied.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (ECF doc. 42) is GRANTED IN PART, in that plaintiffs are required to pay all rent obligations under the three leases at issue from March of 2006 through the end of the leases. Defendants' motion is DENIED IN PART, in that the court finds that ruling on defendants' counterclaim and attorney fee claim is premature at this time.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April  16 , 2009

Kansas City, Missouri